JASON M. FRIERSON
United States Attorney
Nevada Bar No. 7709

REEM BLAIK
Assistant United States Attorney
Nevada Bar No. 16386
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Reem.Blaik@usdoj.gov

*Attorneys for the United States*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

United States of America,

Plaintiff,

v.

Maninder Herr, D.V.M.,

Defendant.

Case No.: 2:24-cv-01724

**Complaint**

Jury Trial Demanded

Plaintiff, the United States of America ("United States"), on behalf of its agency, the United States Drug Enforcement Administration ("DEA"), alleges as follows:

**Introduction**

1. The United States brings this civil case against Defendant Maninder Herr, D.V.M., to recover monetary penalties for Dr. Herr's violations of the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 et seq., and its implementing regulations, 21 C.F.R. § 1301 et seq.

2. Dr. Herr repeatedly and substantially violated the CSA's recordkeeping requirements when he failed to maintain adequate records of controlled substances that his veterinary hospital received and dispensed. Dr. Herr's misconduct prevented the DEA from conducting a controlled-substance accountability audit, which enable the DEA to account for each and every controlled substance received and dispensed by a practitioner. Accordingly, Dr. Herr's recordkeeping violations disrupted the DEA's closed system of distribution and created an unacceptable risk of diversion of controlled substances.

## Jurisdiction and Venue

3. The Court has subject matter jurisdiction over this matter under 21 U.S.C. § 842(c) and 28 U.S.C. §§ 1345 and 1355.

4. Dr. Herr resides in Las Vegas and conducts or conducted business in Pahrump, Nevada, and the incidents the United States allege in this complaint occurred in Pahrump, Nevada. Venue therefore is proper in the District of Nevada under 28 U.S.C. §§ 1391(b)(1) and (2) and 28 U.S.C. § 1395.

## Legal Background

5. The nation is experiencing a public health crisis involving the misuse of prescribed controlled substances. Such misuse creates public health and safety concerns, including opioid addictions, overdoses, and deaths. By enacting the CSA, Congress recognized the importance of preventing the diversion of drugs from legitimate to illegitimate uses by way of appropriate recordkeeping.

6. When enacting the CSA, "Congress was particularly concerned with the need to prevent the diversion of drugs from legitimate to illicit channels." *Gonzales v. Raich*, 545 U.S. 1, 12–13 (2005). To prevent the diversion of controlled substances, "Congress devised a closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA." *Id.* at 13 (citing 21 U.S.C. §§ 841(a)(1), 844(a)). Therefore, "[t]he CSA and its implementing regulations set forth strict requirements regarding . . . recordkeeping." *Id.* at 14. Put simply, the CSA's recordkeeping requirements allow the DEA to control the flow of controlled substance by maintaining a closed regulatory system.

7. Under the CSA, it is unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA. 21 U.S.C. § 841(a).

8. "Practitioners" are defined by the CSA to include licensed veterinarians and hospitals, among other healthcare providers. 21 U.S.C. § 802(21).

9. "Controlled substances" are defined by the CSA as drugs or other substances that are included in one of five schedules, and are classified based upon the potential for abuse, danger, and medicinal value. 21 U.S.C. § 812.

10. "Diversion" is defined by applicable law as the misappropriation of controlled substances from their intended recipients to individuals who misuse the drugs for abusive or illicit purposes. *See, e.g.*, *United States v. Ilayayev*, 800 F. Supp. 2d 417, 433 (E.D.N.Y. 2011); Nev. Rev. Stat. § 453.154(1)).

11. "Registrants" are defined to include any persons or entities that manufacture, distribute, and/or dispense controlled substances, and are required by the CSA to register with the Attorney General of the United States. 21 U.S.C. § 822.

12. The DEA assigns each registrant an individual registration number that is used, inter alia, to monitor compliance with the CSA. 21 C.F.R. § 1301.35. Registrants, such as Dr. Herr, are required to renew their DEA registration every three years by submitting a renewal application to the DEA. In their renewal applications, registrants are required to provide the DEA with pertinent information, including the disclosure of liability issues.

13. The CSA requires registrants to make and maintain "a complete and accurate record of each . . . substance manufactured, received, sold, delivered, or otherwise disposed of." 21 U.S.C. § 827(a)(3); *accord* 21 C.F.R. §§ 1304.04, 1304.11, 1304.21–22.

14. DEA registrants are required to keep detailed dispensing logs that specify the "number of units or volume of such finished form [of controlled substance] dispensed, including the name and address of the person to whom it was dispensed, the date of dispensing, the number of units or volume dispensed, and the written or typewritten name or initials of the individual who dispensed or administered the substance." 21 C.F.R. § 1304.22(c).

15. Such records must be maintained in strict accordance with regulations promulgated by the Attorney General and be available for inspection and copying by authorized officials for at least two years. 21 U.S.C. § 827(b).

16. As a part of the CSA's recordkeeping requirements, DEA registrants are required to conduct biennial inventories, making a "complete and accurate record of all stocks [of controlled substances] . . . on hand." 21 U.S.C. § 827(a)(1).

17. The DEA uses biennial inventories to conduct accountability audits and inspections of a registrant's controlled premises. Accountability audits are conducted based on the physical inventories and the records that registrants are required to maintain for all controlled substances received, manufactured, distributed, dispensed, and/or possessed by a provider during a given time. During such audits, the DEA typically tallies the total number of controlled substances received and dispensed by a practitioner by reviewing records, such as the practitioner's biennial inventory, controlled substance order forms, statements, invoices, and/or dispensing logs. Then, the DEA typically conducts a physical hand-counted tally of all controlled substances on hand during that time. The DEA then compares the record-based tally against the physical hand-counted tally. The record-based tally should match the physical hand-counted tally. Otherwise, negative discrepancies (or "shortages") can be indicative of diversion, while positive discrepancies (or "overages") can be indicative of missing invoices or other recordkeeping issues.

18. DEA registrants shall not "refuse or negligently fail to make, keep, or furnish any record, report, notification, declaration, order or order form, statement, invoice, or information required." 21 U.S.C. § 842(a)(5).

19. The CSA focuses on these recordkeeping requirements in "an attempt to regulate closely the distribution of certain substances determined by Congress to pose dangers, if freely available, to the public at large." *United States v. Averi*, 715 F. Supp. 1508, 1510 (M.D. Ala. 1989).

20. These records enable the DEA to maintain a closed regulatory system of distribution, which allows the DEA to trace the flow of any controlled substance from the time of manufacture, through distribution to the pharmacy, hospital or practitioner that dispenses the controlled substance, to the patient who receives the controlled substance.

21. A closed system of drug manufacture and distribution requires that each registrant maintain accounting and security systems so that no controlled drugs are lost, stolen, or inappropriately dispensed to misusers or street dealers through fraudulent or inappropriate prescriptions and diversions. This can only be accomplished through complete compliance with the CSA and the implementing regulations.

22. Failure to maintain accurate dispensing and distribution records in accordance with the CSA and the Code of Federal Regulations creates a gap in the closed regulatory system of distribution and creates a risk of diversion of controlled substances.

23. Registrants who fail to maintain the required dispensing and distribution records are subject to punishment by civil penalties, of up to $18,759 per violation. 21 U.S.C. § 842(a)(5); 28 C.F.R. § 85.5; Fed. Register Vol. 89, No. 29.

**Parties**

24. The United States brings this action on behalf of the DEA, which regulates the distribution of controlled substances under the authority of the CSA.

25. At all times relevant to this case, Dr. Herr was a Doctor of Veterinary Medicine ("D.V.M.") with a general veterinarian practice and controlled premise entitled "Homestead Animal Hospital," located at 2740 Homestead Road, Pahrump, Nevada 89048.

26. At all times relevant to this case, Dr. Herr was licensed to practice Veterinary Medicine in the State of Nevada.

27. At all times relevant to this case, Dr. Herr's DEA registration number was FH4221709.

28. Under his DEA registration, Dr. Herr was authorized to receive, dispense, and/or administer Schedule II, III, IV, and V controlled substances.

**DEA Investigation**

29. In 2019, Dr. Herr submitted a DEA renewal application that failed to disclose numerous liability issues concerning Dr. Herr's veterinary practice. These issues included, but were not limited to, disciplinary findings issued by the Nevada State Board of Veterinary

Medical Examiners for allegations of: (1) Dr. Herr's negligent treatment of two separate dogs, one suffering from seizures and another with an incomplete cancerous tumor removal; (2) Dr. Herr's substandard maintenance of medical records; and (3) Dr. Herr's negligent treatment of a dog for whom he provided inadequate diagnoses and treatment, which resulted in death. As a result of these disciplinary findings, Dr. Herr agreed to having his D.V.M. license placed on indefinite probation, and ceasing his practice of general veterinary medicine.

30. Shortly thereafter, the DEA investigated the liability discrepancies in Dr. Herr's renewal application.

31. On September 8, 2021, the DEA reported to the Homestead Animal Hospital with the intent of conducting an accountability audit.

32. After inspecting the premise and available records, the DEA discovered that Dr. Herr did not maintain a complete and accurate record of controlled substances and did not have an effective system in place to guard against diversion of controlled substances, which created a substantial risk of diversion.

33. As summarized below in "Table 1," the DEA's accountability audit revealed that Dr. Herr violated a total of 2,161 CSA-related provisions.

<u>Table 1: Total CSA Violations Uncovered by the DEA's Accountability Audit</u>

| **Count** | **Authority** | **Violation** | **Occurrences** |
|---|---|---|---|
| 1 | 21 U.S.C. § 827(a)(3); 21 C.F.R. § 1304.11(a)-(c) | Failure to maintain and produce biennial inventory. | 1 |
| 2 | 21 U.S.C. § 842(a)(5); 21 C.F.R. § 1304.22(c) | Failure to indicate dates received on controlled substance invoices. | 19 |
| 3 | 21 U.S.C. § 842(a)(5); 21 C.F.R. § 1304.22(c) | Failure to indicate number of units of controlled substances acquired on controlled substance invoices. | 16 |
| 4 | 21 U.S.C. § 842(a)(5); 21 C.F.R. § 1304.22(c) | Failure to include patient addresses on controlled substance dispensing log. | 717 |
| 5 | 21 U.S.C. § 842(a)(5); 21 C.F.R. § 1304.22(c) | Failure to include drug-specific details on dispensing log. | 1,376 |

| | | | |
|---|---|---|---|
| 6 | 21 U.S.C. § 842(a)(5); 21 C.F.R. § 1304.21(a) | Failure to maintain and produce totality of invoices received from controlled-substance suppliers. | 32 |
| | | **Total CSA Violations** | **2,161** |

34. First, Dr. Herr could not produce a biennial inventory. The DEA learned that Dr. Herr had never conducted or recorded a biennial inventory.

35. Second, Dr. Herr produced nineteen (19) invoices for the receipt of controlled substances that were missing notations of the date received.

36. Third, Dr. Herr produced sixteen (16) invoices for the receipt of controlled substances that completely failed to indicate the number of units acquired.

37. Fourth, Dr. Herr produced a dispensing log to the DEA. The log did not contain any addresses for patients. The DEA totaled 717 missing address fields in the log.

38. Fifth, as summarized below in "Table 2," Dr. Herr failed to maintain drug-specific dispensing logs that included information required by the Code of Federal Regulations.

Table 2: Dr. Herr's Drug-Specific Dispensing Log Violations

| **Count** | **Controlled Substance** | **Violation** | **Occurrences** |
|---|---|---|---|
| 5 | Tramadol (Schedule IV) | Failure to indicate form of Tramadol | 1 |
| 5 | | Failure to indicate amount (units/volume) of Tramadol dispensed | 8 |
| 5 | Phenobarbital (Schedule IV) | Failure to indicate form of Phenobarbital | 1 |
| 5 | | Failure to indicate name or initials of dispenser/administrator | 2 |
| 5 | | Failure to indicate amount (units/volume) of Phenobarbital dispensed | 5 |
| 5 | Euthasol/Euthanasia (Schedule III) | Failure to indicate the correct controlled substance name, strength or form | 1 |

| | | | |
|---|---|---|---|
| 5 | | Failure to indicate name or initials of dispenser/administrator | 10 |
| 5 | | Failure to indicate amount (units/volume) of Euthasol/Euthanasia dispensed | 24 |
| 5 | Ketamine (Schedule III) | Failure to indicate the strength or form of Ketamine | 1 |
| 5 | | Failure to indicate amount (units/volume) of Ketamine dispensed | 358 |
| 5 | Midazolam/Valium/ Diazepam (Schedules III) | Failure to indicate the correct controlled substance name, strength, or form | 1 |
| 5 | | Failure to indicate amount (units/volume) of either Midazolam, Valium or Diazepam dispensed | 345 |
| 5 | Buprenex (Buprenorphine) (Schedule III) | Failure to indicate the correct controlled substance name, strength, or form | 1 |
| 5 | | Failure to indicate amount (units/volume) of either Buprenorphine dispensed | 18 |
| 5 | | Failure to indicate name or initials of dispenser/administrator | 529 |
| 5 | Torbugesic (Schedule IV) | Failure to indicate the correct controlled substance name, strength, or form | 1 |
| 5 | | Failure to indicate amount (units/volume) of either Torbugesic dispensed | 70 |
| | | **Total Drug-Specific Dispensing Log Violations:** | **1,376** |

39. Sixth, after the on-site inspection, the DEA obtained records from Dr. Herr's controlled substance suppliers. Based on the records received from suppliers, the DEA determined that Dr. Herr had failed to produce thirty-two (32) controlled substance invoices during the inspection.

40. In sum, Dr. Herr repeatedly and substantially violated the CSA's recordkeeping requirements when he failed to maintain proper dispensing and distribution records at his veterinarian clinic. As a result, Dr. Herr's violations prevented the DEA from

conducting a controlled substance accountability audit that is designed to ensure a closed system of drug distribution. Accordingly, Dr. Herr created an unacceptable risk of diversion of controlled substances.

**Causes of Action**

**(Counts 1 – 5)**

**(Violations of 21 U.S.C. §§ 827(a)(1-3) and 842(a)(5);**
**21 C.F.R. §§ 1304.11(c), 1304.21(a), and 1304.22(c))**
**(Civil Penalties for Recordkeeping Violations)**

**Count 1**

41. The United States repeats and re-alleges paragraphs 1-40 as if fully set forth herein.

42. Title 21 U.S.C. § 827(a)(3) provides that each DEA registrant who dispenses controlled substances must maintain a complete and accurate record of each "substance manufactured, received, sold, delivered, or otherwise disposed of." At all times relevant to this case, Dr. Herr held DEA registration number FH4221709.

43. Dr. Herr failed to maintain a biennial inventory, constituting one (1) violation of 21 U.S.C. § 827(a)(3) and 21 C.F.R. § 1304.11(a)-(c).

**Count 2**

44. The United States repeats and re-alleges paragraphs 1-40 as if fully set forth herein.

45. Dr. Herr failed indicate the date that controlled substances were received on nineteen (19) invoices, constituting nineteen (19) violations of 21 U.S.C. § 842(a)(5) and 21 C.F.R. § 1304.22(c).

**Count 3**

46. The United States repeats and re-alleges paragraphs 1-40 as if fully set forth herein.

47. Dr. Herr failed to indicate the number of units acquired on sixteen (16) invoices, constituting sixteen (16) violations of 21 U.S.C. § 842(a)(5) and 21 C.F.R. § 1304.22(c).

**Count 4**

48. The United States repeats and re-alleges paragraphs 1-40 as if fully set forth herein.

49. Dr. Herr failed to maintain adequate records in all of his dispensing logs by omitting patient addresses, constituting 717 violations of 21 U.S.C. § 842(a)(5) and 21 C.F.R. § 1304.22(c).

**Count 5**

50. The United States repeats and re-alleges paragraphs 1-40 as if fully set forth herein.

51. Dr. Herr failed to maintain adequate records for Tramadol by omitting form and/or units/volume of Tramodol dispensed from his dispensing log, constituting nine (9) separate violations of 21 U.S.C. § 842(a)(5) and 21 C.F.R. § 1304.22(c).

52. Dr. Herr failed to maintain adequate records for Phenobarbital by omitting form, units/volume and/or initials/name of the dispenser from his dispensing log, constituting eight (8) separate violations of 21 U.S.C. § 842(a)(5) and 21 C.F.R. § 1304.22(c).

53. Dr. Herr failed to maintain adequate records for Euthasol/Euthanasia by omitting controlled substance name, strength, form, units/volume and/or initials/name of the dispenser from his dispensing log, constituting thirty-five (35) separate violations of 21 U.S.C. § 842(a)(5) and 21 C.F.R. § 1304.22(c).

54. Dr. Herr failed to maintain adequate records for Ketamine by omitting drug strength, form and/or units/volume from his dispensing log, constituting 359 separate violations of 21 U.S.C. § 842(a)(5) and 21 C.F.R. § 1304.22(c).

55. Dr. Herr failed to maintain adequate records of Midazolam, Valium and Diazepam by omitting drug name, strength, form, and/or units/volume from his dispensing log, constituting 346 separate violations of 21 U.S.C. § 842(a)(5) and 21 C.F.R. § 1304.22(c).

56. Dr. Herr failed to maintain adequate records for Buprenex (Buprenorphine) by omitting drug name, strength, form, units/volume and/or initials/name of the dispenser

from his dispensing log, constituting 548 separate violations of 21 U.S.C. § 842(a)(5) and 21 C.F.R. § 1304.22(c).

57. Dr. Herr failed to maintain adequate records for Torbugesic by omitting drug name, strength, form, and/ or units/volume from his dispensing log, constituting seventy-one (71) separate violations of 21 U.S.C. § 842(a)(5) and 21 C.F.R. § 1304.22(c).

58. In sum, Dr. Herr failed to produce drug-specific dispensing logs that included information required by the Code of Federal Regulations, constituting 1,376 separate violations of 21 U.S.C. § 842(a)(5) and 21 C.F.R. § 1304.22(c).

**Count 6**

59. The United States repeats and re-alleges paragraphs 1-40 as if fully set forth herein.

60. The DEA compared all supplier-controlled substance orders sent to Dr. Herr's office with what he produced at the time of inspection. Dr. Herr failed to provide to DEA thirty-two (32) invoices for controlled substances he had received, constituting thirty-two (32) separate violations of 21 U.S.C. § 842(a)(5) and 21 C.F.R. § 1304.21(a).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Prayer for Relief**

WHEREFORE, the United States requests the Court to enter judgment in its favor against Dr. Herr and to order the following relief:

A. Award to the United States civil monetary penalties against Dr. Herr in the amount of not more than $40,538,199, as Dr. Herr is subject to a civil monetary penalty of up to $18,759 per each of his 2,161 violations for the CSA and its implementing regulations. 21 U.S.C. § 842(c)(1); 28 C.F.R. § 85.5; Federal Register; Vol. 89, No. 29.

B. Award to the United States the costs associated with the investigation and prosecution of this matter;

C. Award to the United States any other relief at law and at equity the Court deems appropriate.

Dated: September 16, 2024

JASON M. FRIERSON
United States Attorney

*/s/ Reem Blaik*
REEM BLAIK
Assistant United States Attorney